IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SAGE PINA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-00772-CV-W-WBG |
| | ) |
| SHAMAN BOTANICALS, LLC, and | ) |
| AMERICAN SHAMAN FRANCHISE | ) |
| SYSTEM, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Sage Pina alleges Defendants Shaman Botanicals, LLC and American Shaman Franchise System, Inc. violated the Missouri Human Rights Act ("MHRA") and 42 U.S.C. § 1981 by terminating her employment. *See* Doc. 23 at 7-10. Pending is Defendants' Motion for Summary Judgment. Doc. 31. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

I.  UNDISPUTED FACTS[1]

A.  **Shaman Botanicals and Shaman Franchise**

Defendant Shaman Botanicals, LLC ("Shaman Botanicals") manufactures and produces CBD American Shaman products sold online and in stores. Doc. 32 at 9; Doc. 36 at 8, 15, 18; Doc. 40 at 7. Defendant American Shaman Franchise, LLC ("Shaman Franchise") operates the nationwide franchise system of stores that sell CBD American Shaman products. Doc. 32 at 9;

---

[1] Unless otherwise noted, each fact in this section is supported by the record before the Court and was uncontroverted or was not properly controverted by the opposing party. *See* Fed. R. Civ. P. 56(c) (setting forth how a party demonstrates a fact is genuinely disputed). Nothing in this section should be construed as a finding of fact by the Court. Additionally, throughout this Order, the Court cites the pagination automatically applied to filings on CM/ECF. As such, the automatically generated pagination may be different from the page numbers utilized by the filing parties.

Doc. 36 at 14-15, 18; Doc. 40 at 7.  Shaman Botanicals and Shaman Franchise have different offices and have separate management structures, payrolls, financial records, and operations.  Doc. 32 at 10; Doc. 36 at 15-16; Doc. 40 at 10.  The two entities, however, are owned by the same individual and share accounting, marketing, and human resources personnel.  Doc. 32 at 10; Doc. 36 at 18-19; Doc. 40 at 7-10.

B. **Plaintiff's Employment**

On January 2, 2020, Plaintiff began working as a social media coordinator in Kansas City, Missouri.[2]  Doc. 32 at 5; Doc. 36 at 8, 19; Doc. 40 at 11.  Plaintiff was paid by Shaman Franchise, worked at Shaman Franchise's offices, and reported directly to Shaman Franchise Vice President Marc Sayler.[3]  Doc. 32 at 5; Doc. 36 at 8-9; Doc. 40 at 11-12.  When she began working for Shaman Franchise on January 2, 2020, Plaintiff began a 90-day probationary period.  Doc. 32 at 5; Doc. 36 at 4.  Her work involved social media development and franchise coordination, and at times, she engaged with employees at Shaman Botanicals and Shaman Franchise.  Doc. 32 at 5; Doc. 36 at 8, 19; Doc. 40 at 11.[4]  During her employment, Plaintiff was never disciplined.  Doc. 36 at 18; Doc. 40 at 8.

---

[2] In 2019, Plaintiff worked for CBD American Shaman as a sales associate in a retail store in Boston, Massachusetts.  Doc. 36 at 8; Doc. 36-1 at 2, 6; Doc. 40 at 10.  CBD American Shaman owned the Boston store.  *See* Doc. 36-1 at 6.  CBD American Shaman is not a defendant in this matter, and Plaintiff admits her claims do not arise from her employment with CBD American Shaman.  *Id*.  The pending lawsuit only relates to Plaintiff's employment in January and February 2020.  Doc. 36-1 at 6.

[3] Sayler is only employed by Shaman Franchise.  Doc. 32 at 10; Doc. 36 at 15-16, 18; Doc. 36-3 at 3.

[4] Plaintiff also claims she "performed duties for Shaman [Botanicals]," but the evidence upon which she relies does not support her contention.  *See* Doc. 36 at 9, 15-18 (all citing Plaintiff's Exhibit 2 at 15:21-22).  The portion of Plaintiff's Exhibit 2 upon which she relies sets forth the following:
    Q:    And which entity employed Ms. Pina?
    A:    American Shaman Franchise Systems.
Doc. 36-2 at 4.  The cited portion of the record does not support her claim that she performed duties for Shaman Botanicals.  *See id*.  Accordingly, Plaintiff failed to establish she "performed duties" for Shaman Botanicals.

On her first day of work, Plaintiff acknowledged she was an at-will employee and confirmed receipt of Shaman Franchise's employee handbook. Doc. 32 at 5; Doc. 36 at 8-9; Doc. 36-4 at 30. The handbook welcomed Plaintiff to the Shaman Franchise team and set forth its policies. Doc. 36-4 at 2-28. Among other things, Shaman Franchise's handbook prohibited discrimination against individuals on the basis of race, sex, or age. Doc. 36 at 17; Doc. 36-4 at 12; Doc. 40 at 6. The handbook directed employees to communicate with their supervisor, human resources, Shaman Franchise's Chief Operating Officer, and Shaman Franchise's Chief Executive Officer about issues or concerns. Doc. 36 at 17; Doc. 36-4 at 13; Doc. 40 at 6.

## C.     Complaints Received and Reported by Plaintiff[5]

Sometime in January 2020, Thomas Miles, who was a sales associate with Shaman Franchise, told Plaintiff about a meme a colleague sent him previously that he thought was race-based and inappropriate. Doc. 36 at 20; Doc. 40 at 13-14. Around the same time, Juanita Thedford, who was employed in Shaman Franchise's marketing department, conveyed to Plaintiff that she believed there were pay disparities among employees of color. Doc. 36 at 20; Doc. 40 at 15. Abraham Torres, a Shaman Franchise employee who coordinated new franchises' onboarding, informed Plaintiff that he thought he was not paid his commissions at the same rate as others. Doc. 36 at 21; Doc. 40 at 16. According to Plaintiff, these employees brought complaints to her because she interacted with both Shaman Botanicals and Shaman Franchise. Doc. 36 at 22; Doc. 40 at 19.

---

[5] Defendants assert many of the discrimination allegations are hearsay or speculation, and therefore, cannot be considered in opposition to their motion for summary judgment. *See* Doc. 40 at 13-15, 17. On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in original). Although not briefed extensively, for purposes of this motion only, the Court includes the allegations because they could be admissible under an exclusion or exception to the hearsay rule.

On or about January 24, 2020, Plaintiff brought Miles's, Thedford's, and Torres's, complaints to the attention of Luke Mancillas, who served as the human resources manager for Shaman Botanicals and Shaman Franchise.[6] Doc. 32 at 9; Doc. 36 at 13-14, 18-21; Doc. 36-15 at 1; Doc. 40 at 9, 15. Plaintiff claims she brought her coworkers' complaints to human resources because she believed white employees were permitted to break rules without consequences. Doc. 36 at 19; Doc. 40 at 12. On or about February 8, 2020, Plaintiff informed Mancillas that Torres planned to contact the United States Department of Labor about unequal pay. Doc. 36 at 21; Doc. 40 at 17. Mancillas then spoke with Sayler and Leigh Geither, the Chief Financial Officer of Shaman Botanicals, regarding Torres's complaints. Doc. 36 at 21; Doc. 40 at 17.

On or about February 10, 2020, Plaintiff organized a staff meeting, which was attended by Mancillas, Miles, Thedford, Torres, and three other Shaman Franchise employees. Doc. 36 at 21; Doc. 40 at 19. The meeting's purpose was to discuss employee concerns, including discrimination and harassment. *Id*. The meeting's attendees requested a meeting with Vince Sanders, who owns both Shaman Botanicals and Shaman Franchise, to discuss their concerns. Doc. 36 at 22; Doc. 40 at 20. Mancillas advised Sanders and Geither of the attendees' concerns, and Sanders initially agreed to meet with the employees. *Id*.; Doc. 33-2 at 2. The attendees were to meet with Sanders after they returned from a Las Vegas conference. Doc. 36 at 22; Doc. 40 at 20. After meeting with Geither, however, Sanders decided against meeting with the employees. Doc. 36 at 22; Doc. 40 at 21.

**D.    Franchisee Conference in Las Vegas, Nevada**

Shaman Franchise held an annual franchisee conference in Las Vegas, Nevada on February 12 and 13, 2020. Doc. 32 at 5; Doc. 36 at 9. Shaman Franchise utilizes the annual conferences to

---

[6] In his position, Mancillas conducts investigations regarding discrimination, harassment, and retaliation for both entities. Doc. 36 at 18-19; Doc. 40 at 9-10.

impress current and future franchisees. Doc. 32 at 5-6; Doc. 36 at 9. At the annual conferences, franchisees are educated and trained on business improvement methods. Doc. 32 at 4; Doc. 36 at 4. For the 2020 conference, Plaintiff was to prepare and deliver a PowerPoint presentation ("the presentation") to educate franchisees on using social media to grow their businesses. Doc. 32 at 6; Doc. 36 at 9; Doc. 40 at 22. She admitted that preparing and delivering the presentation was an important part of her job responsibilities. Doc. 32 at 6; Doc. 36 at 9. Her presentation was scheduled for 1:00 p.m. on February 12, 2020. Doc. 32 at 6; Doc. 36 at 10.

On January 30, 2020, Sayler emailed an outline for the presentation to Plaintiff. Doc. 32 at 6; Doc. 33-4; Doc. 36 at 9-10. Prior to the conference, Plaintiff advised Sayler she needed more information from the franchisees. Doc. 36 at 23; Doc. 40 at 22. On February 10, 2020, two days before the conference, Sayler texted Plaintiff at 5:19 p.m. and asked if she had sent the presentation to him yet. Doc. 32 at 6; Doc. 33-5 at 2; Doc. 36 at 10. On the morning of February 11, 2020, Plaintiff responded: "Hey!! I just saw this. Sending today. Just needs some media added!!!! I'm soooooooo excited" followed by over a dozen emojis. *Id*. By 2:00 p.m. on February 11, 2020, less than twenty-four hours before the scheduled presentation, Sayler had not received the presentation and again asked Plaintiff if she had sent it. Doc. 32 at 6; Doc. 33-5 at 3; Doc. 36 at 10. Plaintiff responded, "Just finishing up! I'm waiting on some pics to finish it completely. I'll send what I got it's just not fully ready." *Id*. Three hours later, Sayler, who still had not received the presentation, texted Plaintiff again. *Id*. She responded, "Once I'm at the airport with WiFi I will! Sorry I'm being a weird protectionist." Doc. 32 at 6-7; Doc. 33-5 at 4; Doc. 36 at 10-11.

Plaintiff flew to Las Vegas but forgot to bring her work laptop, which contained her presentation. Doc. 32 at 7; Doc. 36 at 11, 23; Doc. 40 at 22. At Plaintiff's request, Mancillas obtained her laptop and forwarded the presentation to her. *Id*. At Sayler's request, Mancillas also

sent him a copy, but Sayler could not view the entire presentation due to formatting issues. Doc. 36 at 12, 23; Doc. 40 at 22.

On the morning of the presentation, Plaintiff claimed she was still obtaining information from franchisees for the presentation. Doc. 36 at 12; Doc. 40 at 23. Approximately one hour before she was scheduled to present, Plaintiff emailed her presentation to Sayler for the first time. Doc. 32 at 7; Doc. 33-6; Doc. 36 at 12, 23; Doc. 40 at 23. According to Sayler, Plaintiff's presentation was incomplete and unacceptable because it lacked content, included blank pages, contained "template content," had graphics and text describing the planets of the solar system, failed to provide useful information, used random photos without captions, and did not include Plaintiff's professional biography or credentials. Doc. 32 at 7; Doc. 33-1 at 12, 17-19; Doc. 33-6; Doc. 36 at 12. Upon receipt of Plaintiff's work, Sayler and Plaintiff agreed she would not give the presentation. Doc. 32 at 8; Doc. 36 at 12; Doc. 40 at 23.

**E.  Termination of Plaintiff's Employment**

On February 12, 2020, the day of the presentation, Sayler decided to terminate Plaintiff's employment. Doc. 32 at 8; Doc. 36 at 13. Although Sayler made the decision to terminate Plaintiff's employment, he informed Sanders and Mancillas of his decision. Doc. 32 at 8; Doc. 36 at 13, 23; Doc. 40 at 24. Plaintiff was terminated on February 18, 2020 – forty-two days into her 90-day probationary period. Doc. 32 at 5; Doc. 36 at 8-9.

**F.  Charge of Discrimination**

On August 6, 2020, Plaintiff filed a charge of discrimination ("charge") with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission. Doc. 33-7; Doc. 36-15. In the charge, Plaintiff identified her employer as "Shaman Botanicals LLC d/b/a American Shaman." Doc. 33-7 at 2; Doc. 36-15 at 1. According to her charge, Plaintiff believed

she was "discriminated against based on race allegations, then retaliated against . . . for making complaints." Doc. 33-7 at 3; Doc. 36-15 at 2.

G.  **Plaintiff's Claims in this Lawsuit**

In September 2021, Plaintiff filed a lawsuit against Shaman Botanicals, LLC d/b/a American Shaman in the Circuit Court of Jackson County, Missouri. Doc. 2-1. In October 2021, Defendants removed the matter to this Court. Doc. 1. In her second amended complaint, Plaintiff alleges Shaman Botanicals, LLC d/b/a American Shaman and Shaman Franchise racially discriminated against her and created a hostile work environment.[7] Doc. 23 at 5-6, 8-9. Specifically, she states Defendants' actions fostered an "abusive, hostile, offensive and intimidating work environment" and the "terms, conditions, and privileges of [her] employment were adversely altered because Defendants' employees and management classified [Plaintiff] on the basis of her race." *Id*. Additionally, Plaintiff claims Defendants retaliated against her when she complained of race discrimination. *Id*. at 7-10. Defendants move for summary judgment in their favor on all claims. Doc. 32.

## II.  STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Banford v. Bd. of Regents of Univ. of Minn.*, 43 F.4th 896, 899 (8th Cir. 2022) (citations omitted). To support its assertion

---

[7] In the introduction of her second amended complaint, Plaintiff indicates she was "subjected to unlawful discrimination based on her race *and sex*." Doc. 23 at 1 (emphasis added). The complaint, however, contains no further allegations or claims of sex discrimination. *See id*. at 1-10. Plaintiff's single reference to potential sex discrimination, without more, fails to state a claim upon which relief may be granted for sex discrimination. Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (finding a complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face). In addition, Plaintiff does not raise any argument in her response to the pending summary judgment indicating she has alleged such a claim. *See* Doc. 36. Thus, to the extent Plaintiff was attempting to bring a sex discrimination claim, it is dismissed.

that no genuine dispute of material fact exists, the movant must cite "to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56(c)(3)-(4), (e); L.R. 56.1(a), (d). In response, the nonmovant must set forth facts, supported by evidence, demonstrating a genuine issue for trial; showing the movant's cited materials "do not establish the absence . . . of a genuine dispute" or the movant "cannot produce admissible evidence to support the fact"; and/or objecting to the material the movant relied on because it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)-(2); *see also* Fed. R. Civ. P. 56(c)(3)-(4), (e); L.R. 56.1(b), (d). Mere allegations, unsupported by specific facts or evidence beyond a plaintiff's own conclusions, are insufficient to survive summary judgment. *See Celotex Corp.*, 477 U.S. at 324; *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

When considering a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *See Muldrow v. City of St. Louis*, 30 F.4th 680, 687 (8th Cir. 2022) (citations omitted). The Court is not permitted to make credibility determinations, weigh evidence, or attempt to determine the truth of the matter. *Leonetti's Frozen Foods, Inc. v. Rew. Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (quotation marks and citations omitted). If the record "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *see also Lissick v. Andersen Corp.*, 996 F.3d 876, 882 (8th Cir. 2021) (citation omitted).

### III.     DISCUSSION

**A.     Plaintiff's Employment (or lack thereof) with Shaman Botanicals**

Plaintiff alleges both Defendants violated 42 U.S.C. § 1981 and the MHRA. *See* Doc. 23. Section 1981, which guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts," provides a federal remedy against racial

8

Case 4:21-cv-00772-WBG   Document 44   Filed 01/27/23   Page 8 of 18

discrimination and retaliation in private employment. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445-46 (2008) (quoting 42 U.S.C. § 1981(a)); *Turner v. Ark. Ins. Dep't.*, 297 F.3d 751, 755-56 (8th Cir. 2002) (citations omitted). Pursuant to the MHRA, an employer cannot discriminate against an employee on the basis of race, nor retaliate against an employee who has opposed any practice prohibited by the MHRA. Mo. Rev. Stat. §§ 213.055.1(a), 213.070.1(2) (2017). Shaman Franchise admits it employed Plaintiff. *See* Doc. 32 at 4, 11. Shaman Botanicals, however, argues it is entitled to summary judgment because it was not Plaintiff's employer, and therefore, cannot liable under section 1981 or the MHRA. Doc. 32 at 12-13. Plaintiff contends Shaman Botanicals and Shaman Franchise are "either a single employer or joint employer" and are both liable under section 1981 and the MHRA. Doc. 36 at 25.

When two separate entities are closely entwined, they may be considered a "single employer" or an "integrated enterprise." *See Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 793 (8th Cir. 2009) (citation omitted); *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 78-80 (Mo. Ct. App. 2015); *see also Jarred v. Walters Indus. Elecs., Inc.*, 153 F. Supp. 2d 1095, 1098 (W.D. Mo. 2001).[8] Alternatively, if two separate entities choose to "handle jointly important aspects of their employer-employee relationship," they may be considered "joint employers." *Walton v. Edge Med. Prof. Serv., LLC*, 442 F. Supp. 2d 731, 749 (W.D. Mo. 2006) (citation omitted).

The existence of an employer-employee relationship is a question of law based on the facts of record. *See, e.g., Baker v. Stuart Broad. Co.*, 560 F.2d 389, 392 (8th Cir. 1997 (finding "sufficient facts to hold as a matter of law" that "a[n] . . . interrelation of operations between the

---

[8] Courts, including this one, utilize the same factors under both section 1981 and Title VII when analyzing a single or joint employer relationship. *See Edwards v. PAR Elec. Contractors, Inc.*, No. 19-00126-CV-W-BP, 2019 WL 2745743, at *6 (W.D. Mo. July 1, 2019); *see also Mack v. J.M. Smuckers Co.*, No. 21-4038-SAC-ADM, 2022 WL 4547428, *5 (D. Kan. Sept. 29, 2022); *Johnson v. Baptist Mem'l Health Care Corp.*, No. 2:18-cv-02509-SHM-cgc, 2019 WL 6917902, at *2-5 (W.D. Tenn. Dec. 19, 2019); *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 421 (E.D. Penn. 2016).

two companies" existed); *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 595 (Mo. banc. 2013) (holding summary judgment was proper when the plaintiff could not "establish an employer-employee relationship existed between her and [a defendant] as a matter of law."). For federal employment claims, courts consider the same factors when determining if a single or joint employer relationship exists: "(1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) the centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities."[9] *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014) (citation omitted); *Sandoval*, 578 F.3d at 793 (citation omitted); *Walton*, 442 F. Supp. 2d at 748-49. Similarly, under the MHRA, courts analyze employee-employer relationships through an economic realities test. *See Diaz*, 484 S.W.3d at 79. Under this test, the court considers:

> (1) [W]ho has the power to hire and fire the worker; (2) who supervises and controls the worker's work schedule and conditions of work; (3) who determines the rate and method of payment of the worker; (4) who maintains work records; and (5) whether the alleged employers, premises and equipment were used for the plaintiff's work.

*See id.*[10] Although neither party briefed Missouri's economic realities test (*see* Docs. 32, 36, 40), the Court considers its factors *infra*.

Plaintiff alleges Defendants are "a single integrated enterprise" because Shaman Botanicals manufactures CBD products sold to franchises, and the franchises are purchased through Shaman Franchise. *See* Doc. 36 at 26. She also claims the "interrelation of [Defendants'] operations and centralized control of labor relations" "weighs in favor" of a joint employer relationship. *Id*. In

---

[9] The parties agree these are the appropriate factors to be considered by the Court. *See* Doc. 36 at 25-27; Doc. 40 at 36-37.

[10] In *Diaz*, the Missouri Court of Appeals modified the economic realities test specifically for the MHRA's prior definition of employer. *Diaz*, 484 S.W.3d at 79-80. The MHRA formerly required "an entity that is not the employer-in-fact directly act in the interest of the employer-in-fact." *Id*. (internal quotations omitted). As the MHRA no longer defines "employer" to include those "directly acting in the interest of an employer," it remains unclear which test would apply. *See* Mo. Rev. Stat. § 213.010(8) (2017).

support, Plaintiff avers she performed work for Shaman Botanicals, and the two entities "shared the same human resources personnel." *Id*. at 26-27. Plaintiff also contends Sanders's ownership of both entities supports a single employer and joint employer relationship. *See id*.

Based on the evidence before the Court, the undisputed facts do not demonstrate Shaman Botanicals employed her singly or jointly with Shaman Franchise. While the record establishes the entities shared a few personnel and were both owned by the same individual, the interrelation between the two entities stops there. There is no evidence of centralized control of labor relations or common financial control. While Plaintiff may have engaged with employees for both entities, she was paid by Shaman Franchise and was supervised by a Shaman Franchise employee. Plaintiff admittedly received and signed Shaman Franchise's employee handbook, but nothing in the record demonstrates she received and/or signed something similar for Shaman Botanicals. Furthermore, Plaintiff has not set forth what, if any, work she purportedly performed for Shaman Botanicals during her employment. *See supra*, n.4.

Related to the economic realities test, Plaintiff was hired by Shaman Franchise – not Shaman Botanicals. Sayler, who was Plaintiff's immediate supervisor and made the decision to terminate her employment, was exclusively employed by Shaman Franchise. There is no evidence suggesting anyone other than Sayler supervised and controlled Plaintiff's work. And the record does not indicate Shaman Botanicals, which had offices separate from Shaman Franchise, had any input in Plaintiff's work schedule, conditions of work, and rate and method of pay. In fact, as mentioned *supra*, Plaintiff was paid by Shaman Franchise. Even when viewing the evidence in the light most favorable to Plaintiff, the record does not demonstrate Shaman Botanicals and Shaman Franchise are an integrated enterprise or that they jointly employed Plaintiff. Accordingly, the Court **GRANTS** summary judgment in favor of Shaman Botanicals on all of Plaintiff's claims.

B.    **Exhaustion of Administrative Remedies**

Shaman Franchise seeks summary judgment on Plaintiff's MHRA claims because she "failed to exhaust her administrative remedies" when she "failed to name Shaman Franchise in her charge of discrimination." Doc. 32 at 13-14. Before filing a civil action under the MHRA, an individual must exhaust her administrative remedies. Mo. Rev. Stat. § 213.075(1) (2017). An administrative charge must be filed with the Missouri Commission on Human Rights within 180 days of the discriminatory or retaliatory act. *Id*. The charge must state "the name and address of the employer . . . alleged to have committed the unlawful discriminatory practice . . . ." *Id*. "[R]equiring an individual to be named in the charge in order to be included in the later civil suit serves two purposes: to give notice to the charged party[;] and to provide an avenue for voluntary compliance without the resort to litigation, such as through the [administrative body's] conciliation process." *Wiedner v. Ferrellgas, Inc.*, 607 S.W.3d 231, 239 (Mo. Ct. App. 2020) (quoting *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 669 (Mo. banc 2009)).[11]

Here, the Court finds Plaintiff sufficiently exhausted her administrative remedies as it relates to her MHRA claims against Shaman Franchise. The charge identified Plaintiff's employer as "Shaman Botanicals LLC d/b/a American Shaman." Shaman Franchise's full name is American Shaman Franchise, LLC which includes the phrase "American Shaman." Doc. 33-7 at 2. As such, she sufficiently named her employer. Additionally, in the particulars section of her charge, Plaintiff referred to "Shaman Botanicals LLC d/b/a CBD American Shaman," which she shortened

---

[11] The Court is mindful that both *Wiedner* and *Hill* discuss the MHRA prior to its amendment in August 2017. Both parties, however, appear to agree *Hill* – and the factors set forth therein – remains good law (*see* Doc. 32 at 13-17; Doc. 36 at 29-31), and this Court has been unable to find anything to the contrary. *See e.g.*, *Young v. Hy-Vee, Inc.*, No. 19-00699-CV-W-DGK, 2020 WL 39197, at *3-5, (W.D. Mo. Jan. 3, 2020) (finding administrative remedies against a party were not exhausted in consideration of *Hill*); *Herring v. Yanfeng USA Auto. Trim Sys., Inc.*, No. 19-06044-CV-SJ-NKL, 2019 WL 2270605, at *1-2 (W.D. Mo. May 28, 2019) (same).

to "Company" and "American Shaman." *Id*. Accordingly, Shaman Franchise was sufficiently named and had sufficient notice of the charge.

If including "American Shaman" in the employer's name was not sufficient, other evidence supports a finding that Shaman Franchise was given sufficient notice of the charge. The charge particulars identified several individuals with whom Plaintiff worked. *Id*. at 2-3. Those individuals included Miles, Torres, Thedford,[12] and Sayler – all of whom are Shaman Franchise employees. *See supra*, section I(C). The charge includes specific references to conversations with her "direct supervisor" Marc Sayler, who was exclusively employed by Shaman Franchise. Doc. 33-7 at 2. The charge includes specific references to Shaman Franchise's conference in Las Vegas. *Id*. at 3. Additionally, both Shaman Botanicals and Shaman Franchise are represented by the same counsel in the pending matter, and the address included on the charge was the attorney's office. Doc. 33-7 at 2; Doc. 36 at 24; Doc. 40 at 27. Based on the foregoing, the Court finds Shaman Franchise was given notice of Plaintiff's charge.[13] Accordingly, the Court **DENIES** summary judgment in favor of Shaman Franchise on Plaintiff's MHRA claims (Counts I and II).

**C.     Race Discrimination under the MHRA and Section 1981**[14]

Plaintiff alleges Shaman Franchise discriminated against her on the basis of her race in violation of the MHRA and section 1981. Doc. 23 at 5-6, 8-9. Shaman Franchise seeks summary

---

[12] Plaintiff identified Juanita Thedford only by her first name. Doc. 33-7 at 3.

[13] The Court also observes Shaman Franchise's brief omits any indication that it did not receive the charge. *See* Doc. 32.

[14] Although Plaintiff's second amended complaint refers to retaliation in the form of unfair discipline (*see* Doc. 23 at 9), she fails to allege any discipline she received, and it is undisputed by the parties that Plaintiff was never disciplined. Doc. 36 at 18; Doc. 40 at 8. Plaintiff's operative complaint also references retaliatory harassment (*see* Doc. 23 at 9), but the complaint does not set forth any allegations as to what the harassment was, and Plaintiff's briefing is silent as to what, if any, harassment she experienced. *See* Docs. 23, 36. To the extent Plaintiff is attempting to bring retaliatory discipline or retaliatory harassment claims under section 1981 or the MHRA, she failed to state said claims in her complaint. *See* Fed. R. Civ. P. 8(a). Even if Plaintiff sufficiently pleaded said claims, her brief does not address those claims or establish a prima facie case for either claim. To the extent Plaintiff is attempting to bring either claim in this lawsuit, Shaman Franchise is entitled to summary judgment on both claims.

judgment on Plaintiff's race discrimination claims because she abandoned these claims by failing to address them in her response to the summary judgment motion, or alternatively, cannot demonstrate a prima facie case of race discrimination. Doc. 32 at 17-20; Doc. 40 at 28.

Plaintiff's response to the summary judgment motion neither addresses her race discrimination claims nor properly contests the bases of Shaman Franchise's summary judgment motion on her race claims. *See* Doc. 36. "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). By failing to oppose Shaman Franchise's argument or the bases for its argument, the Court finds Plaintiff has abandoned her race discrimination claims. As such, the Court **GRANTS** summary judgment in favor of Shaman Franchise on Plaintiff's race discrimination claims under the MHRA and section 1981 (Counts I and III).[15]

## D. Retaliation under the MHRA and Section 1981

Plaintiff alleges Shaman Franchise terminated her employment in retaliation for making complaints about race discrimination. Doc. 23 at 7-10.[16] A plaintiff must either present direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas* burden-

---

[15] Assuming *arguendo* Plaintiff did not abandon her race discrimination claims, these claims also fail on substantive grounds. MHRA and Section 1981 discrimination claims are assessed under the *McDonnell Douglas* burden-shifting framework. *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Edwards*, 2019 WL 2745743 at *3 (noting MHRA and section 1981 discrimination claims have similar elements). This framework requires a plaintiff to set forth a prima facie case of discrimination. *Grant v. City of Blytheville*, 841 F.3d 767, 773 (8th Cir. 2016) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-03)). A plaintiff must present evidence that she (1) is "a member of a protected class," (2) was qualified to perform the job, or "met [her employer's] legitimate employment expectations," (3) "suffered an adverse employment action," and (4) has facts that "give rise to an inference of discrimination based on race." *Id*. at 773; *see also Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 937 (8th Cir. 2019). Here, Plaintiff failed to establish any of the requisite elements – except that she suffered an adverse employment action. There is no evidence that she is a member of a protected class, she was meeting her employer's legitimate expectations or was qualified to perform the job. Additionally, the undisputed facts do not give rise to an inference of race discrimination. Accordingly, if the Court were to consider the substance of the claims, Shaman Franchise would be entitled to summary judgment on Counts I and III.

[16] The parties agree Plaintiff's retaliation claim is governed by the *McDonnell Douglas* burden-shifting framework. Doc. 32 at 17; Doc. 36 at 31 n.4.

shifting framework. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019-20 (8th Cir. 2011). Because there is no direct evidence of retaliation in the record, the Court turns to the burden-shifting framework.

When applying the *McDonnell Douglas* burden-shifting framework, Plaintiff first bears the burden of establishing a prima facie case of retaliation. *See Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) (internal quotation marks omitted) (applying the MHRA); *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012) (applying *McDonnell Douglas* to a section 1981 retaliation claim). To establish a retaliation claim, a plaintiff must prove (1) she engaged in statutorily protected activity, (2) the employer "took an adverse employment action," and (3) "a causal connection exists between the complaint and adverse action."[17] *Heuton*, 930 F.3d at 1023.

Shaman Franchise does not contest that Plaintiff engaged in a statutorily protected activity, and an adverse employment action was taken against her. *See* Doc. 32 at 20. Instead, it exclusively challenges whether Plaintiff sufficiently demonstrated a causal connection between her protected activity and her discharge. *See id*. Shaman Franchise argues Plaintiff fails to show a causal connection because Sayler, who made the decision to terminate Plaintiff's employment, was "unaware" of her discrimination complaints when he decided to end her employment. *Id*.

To establish causation under the MHRA, Plaintiff must demonstrate she was discharged "because of" her protected activity, meaning her protected activity was the "motivating factor" for Shaman Franchise's decision to discharge her. . Mo. Rev. Stat. §§ 213.010(19), 213.111(5) (2017). A "motivating factor" is one that "actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." *Id*. at § 213.010(19) (2017). To

---

[17] The Eighth Circuit applies "the same analysis to claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981." *See Takele*, 576 F.3d at 38; *see also Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013) (applying same standard to section 1981 retaliation claims).

demonstrate causation under section 1981, Plaintiff "must prove the desire to retaliate was the but for cause of her termination—that is, that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of" Shaman Franchise. *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (internal quotations and citation omitted); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020). For section 1981 claims, it is insufficient to solely demonstrate the retaliation was "a 'substantial' or 'motivating' factor in the employer's decision." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015)).

"Proximity alone can be enough to establish causation for a *prima facie* case." *Gibson v. Geithner*, 776 F.3d 536, 541 (8th Cir. 2015) (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) ("These two events are extremely close in time and we conclude under our precedent this is sufficient, but barely so, to establish causation, completing [plaintiff's] *prima facie* case.")); *see also McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 752 (Mo. Ct. App. 2020). The decision to terminate Plaintiff's employment was made on February 12, 2020 – two days after she participated in a meeting discussing other employees' discrimination complaints. *See supra*, sections I(C) and (E). Plaintiff was informed of discharge on February 18, 2020, which was eight days after the meeting. The short time between Plaintiff's protected activity and Shaman Franchise's decision is sufficient to establish the casual connection element of retaliation under either the MHRA or section 1981.

As Plaintiff has demonstrated a prima facie case of retaliation, the burden shifts to Defendant to "identify a legitimate, non-retaliatory reason for the dismissal." *Thompson v. Univ. of Ark. Bd. of Trs.*, 52 F.4th 1039, 1042 (8th Cir. 2022). Shaman Franchise argues Plaintiff was discharged because of her deficient presentation for the franchise conference in Las Vegas, which her supervisor, Sayler, received just one hour before Plaintiff was scheduled to present. It is

undisputed that Plaintiff was tasked with giving an important presentation to franchisees at the conference. Despite multiple requests to do so, it is also undisputed that Plaintiff never sent Sayler her presentation prior to their arrival in Las Vegas. Furthermore, the presentation Plaintiff sent to Sayler was incomplete and included, among other things, blank slides, template information, and formatting issues. As such, Shaman Franchise has offered a legitimate, non-retaliatory justification for terminating her employment. *See Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (finding "performance-related concerns constitute legitimate, non-discriminatory justifications for discharging" an employee) (citation omitted); *see also Barnhardt v. Open Harvest Co-op.*, 742 F.3d 365, 372 (8th Cir. 2014); *Chambers v. Travelers Cos.*, 668 F.3d 559, 567 (8th Cir. 2012).

"If the defendant identifies a legitimate reason, then the burden shifts back to the plaintiff to show that this supposedly legitimate reason was in fact pretextual." *Thompson*, 52 F.4th at 1042 (citing *Onyiah v. St. Cloud State Univ.*, 5 F.4th 926, 930 (8th Cir. 2021)). To show an employer's reason is pretextual, a plaintiff may show the proffered reason has no basis in fact, or "a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Gibson*, 776 F.3d at 540 (citation omitted). Either route shows "the prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Hairston v. Wormuth*, 6 F.4th 834, 843 (8th Cir. 2021) (citation omitted). Although bearing the burden to demonstrate pretext, a plaintiff "need not definitively prove that her employer's reason for firing her was pretextual" to survive summary judgment. *Id*. Instead, she need only "adduc[e] enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motives." *Id*. (citation omitted). Timing alone is insufficient to establish pretext, and instead, Courts "evaluate the timing of the discharge . . . in light of other evidence . . . .in the record." *Gibson*, 776 F.3d at 541 (internal quotations and citations omitted).

Plaintiff contends three facts support a pretext finding: (1) she was fired days after organizing and participating in a staff meeting to discuss employees' complaints of discrimination and harassment, (2) she timely prepared the presentation she was to deliver at the conference, and (3) Sayler's interest in her presentation was "farcical." Doc. 36 at 36-39. Additionally, it is undisputed by the parties that Sayler knew of Torres's unequal pay concerns after Plaintiff complained to Mancillas prior to the Las Vegas conference. Sayler's knowledge of Plaintiff's complaint regarding Torres, coupled with the circumstances at the conference and the temporal proximity of Plaintiff's termination, raises "genuine doubt as to the legitimacy" of Sayler's motives. *See Hairston*, 6 F.4th at 843. The Court must consider the evidence in its totality and must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *Muldrow*, 30 F.4th at 687; *Fitzgerald v. Action Inc.*, 521 F.3d 867, 875 (8th Cir. 2008). In doing so, the Court finds Plaintiff successfully met her burden of demonstrating a material question of fact exists as to pretext. Accordingly, the Court **DENIES** Shaman Franchise's summary judgment motion as to Plaintiff's MHRA and section 1981 retaliation claims (Counts II and IV).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of Shaman Botanicals on all claims, **GRANTS** summary judgment in favor of Shaman Franchise on Counts I and III, and **DENIES** summary judgment on Counts II and IV.

**IT IS SO ORDERED.**

DATE: January 27, 2023               */s/ W. Brian Gaddy*
                                                                           W. BRIAN GADDY
                                                                          UNITED STATES MAGISTRATE JUDGE